# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

AHMAD FARID KHORRAMI,

    Plaintiff,

       v.

MICHAEL E. ROLINCE, *et al.*,

    Defendants.

No. 03 C 6579
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

Plaintiff Ahmad Farid Khorrami ("Plaintiff" or "Dr. Khorrami") filed a first amended complaint that states two counts against various FBI and INS agents (collectively "Defendants"). Count I is a *Bivens* claim alleging Fourth Amendment violations; Count II is a *Bivens* claim alleging Fifth Amendment violations. Currently before me is Defendants' motion to dismiss.

## I. BACKGROUND

Dr. Khorrami is an Iranian-born British citizen currently residing in the United States. Dr. Khorrami spent some time in the U.S. in the mid-1970s and then returned here in 1997.

In August, 2000, Dr. Khorrami applied for legal permanent residence based upon his marriage to a U.S. citizen. In February, 2001, he was issued a form I-512 advance parole authorization that enabled him to visit Canada and be paroled back in the country. In July, 2001, Dr. Khorrami became employed at Skyway Airlines, a commuter airline based in Milwaukee, Wisconsin.

In the days following September 11, 2001, Dr. Khorrami learned that FBI agents had contacted many of his acquaintances to inquire about him. Upon becoming aware of this, he reached out voluntarily to the Chicago FBI office and offered to make himself available for a

meeting. On September 17, 2001, two Chicago FBI agents visited Dr. Khorrami at his home in Chicago for approximately three hours. After the meeting, the agents left and indicated that they did not have ongoing concerns about him.

Later that day (September 17, 2001), Dr. Khorrami went to Skyway's offices to meet with the chief pilot. During that meeting, Plaintiff alleges that an FAA representative abruptly entered the office and ripped Dr. Khorrami's airport security ID from around his neck. At that point, several government agents—from the INS and FBI—appeared at Skyway's offices. Dr. Khorrami alleges that the agents—including Agent John Neinhardt of the Milwaukee INS—then interrogated him for the next twelve hours. He claims that the agents used threatening and abusive language. Dr. Khorrami also claims that throughout the interrogation, he pleaded with Agent Neinhardt to allow him to call the British embassy; he claims that he was not permitted to do so.

Dr. Khorrami alleges that he was then taken to the FBI headquarters in Milwaukee where he submitted to a lie detector test. He claims that an FBI agent there—Dale Mueller—falsely told him that he worked for a private company that administered the test. He further asserts that he was asked to sign a document consenting to the use of the test results in court, and told, "if you don't sign, you don't get out of here." Plaintiff also alleges that Agent Neinhardt warned him, "we're going to cancel your visa, we're going to take you."

Agent Neinhardt then allegedly handed Plaintiff a Notice to Appear, charging that he was an arriving alien in INS custody. He also claims that he was served with a letter from the then-INS Director stating that his immigration "parole" had been revoked. Dr. Khorrami claims that he was then taken to a waiting car, that Agent Neinhardt punched him in his right arm, and that

Agent Neinhardt called him a terrorist. Plaintiff claims that he was then transported to Waukesha County Jail in Wisconsin and that he was strip searched upon arrival.

He alleges that on September 19, 2001, Agent Neinhardt again interrogated him and told him that he had canceled Plaintiff's visa in order to assist his colleagues at the FBI. Dr. Khorrami claims that Agent Neinhardt told him that the INS was involved because the FBI lacked sufficient information to continue to keep him.

Dr. Khorrami claims that his wife spoke with FBI and INS officials on September 18, 2001, and that they indicated to her that it was likely that Plaintiff would soon be cleared from the suspect list. He also claims that an agent informed his wife on September 22, 2001, that the FBI had cleared Dr. Khorrami's name from all watch lists. Dr. Khorrami claims that despite these assurances, he remained in detention. He claims that on September 21, his fourth day in Waukesha, Agents Dale Mueller and Jack Felske of the Milwaukee FBI interrogated him again. He claims that while Agent Felske waited in the hall, Agent Mueller threatened him verbally, knocked him out of his chair, and kicked him repeatedly. He alleges that this beating caused blood in his urine, and he claims that he was treated for suicidal tendencies. He further asserts that he began experiencing chest pains.

On September 24, he was taken to an INS processing center in Broadview, Illinois and then quickly moved to the DuPage County Jail in Wheaton, Illinois. In September and October, 2001, Plaintiff's counsel filed motions to have Dr. Khorrami released on bail. The INS opposed the motions, arguing that Plaintiff was an inadmissible alien and that the Immigration Judge had no jurisdiction to reconsider an INS bail determination. On October 10, 2001, the Immigration Judge denied Dr. Khorrami's motions.

At a November 14, 2001 hearing before the immigration judge, the INS submitted an affidavit from defendant Michael Rolince, FBI Chief of the International Terrorism Operations Section, which included numerous reasons why the FBI was investigating Plaintiff to determine his connections, if any, to the terrorist attacks of September 11, 2001.

One month later in a December 12, 2001 hearing, the INS submitted a letter from defendant Thomas Knier, FBI Special Agent in Charge, explaining that one of the statements in Rolince's letter—that Dr. Khorrami lived in the same apartment as one of the hijackers—was wrong. Knier explained that the FBI had information showing that this statement was incorrect at the time affidavit was submitted. He further explained that it was nevertheless mistakenly included because of the fast-paced need to gather millions of pieces of information regarding the September 11 bombings and because the FBI was unable to centralize this information.

On December 14, 2001—two days after defendant Knier's clarifying letter was submitted—the INS granted Dr. Khorrami parole under 8 U.S.C. § 1226, releasing him from detention pending Dr. Khorrami's removal proceedings.

In February, 2002, Dr. Khorrami suffered a heart attack, which he claims resulted from his mistreatment and incarceration.

During the course of Dr. Khorrami's removal proceedings, his counsel filed several motions and appeared at several hearings in which he argued that Dr. Khorrami was not subject to detention or removal because he was not an inadmissible alien as charged by the INS. The immigration judge denied these motions, and in 2004, issued a final order, finding Dr. Khorrami to be removable as charged. In particular, he held that once Dr. Khorrami's parole was revoked, his status reverted to an alien seeking admission into the United States, and because he had no

valid entry documents, he was removable under 8 U.S.C. § 1182(a)(7)(A)(i)(I).  Although the immigration judge found that Dr. Khorrami was removable, he also granted Plaintiff's request for permanent residence status based on his marriage to a U.S. citizen.  As a result, Dr. Khorrami was not deported.

## II.    DISCUSSION

### A.    Motion to Dismiss Standard

A motion to dismiss tests the sufficiency of a complaint, not the merits of a case.  *Autry v. Northwest Premium Servs., Inc.*, 144 F.3d 1037, 1039 (7th Cir. 1998).  I should grant Defendants' motion to dismiss only if Plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief.  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Furthermore, I must accept all well-pleaded factual allegations in the complaint as true, drawing all reasonable inferences from those facts in Plaintiff's favor.  *Cleveland v. Rotman*, 297 F.3d 569, 571 (7th Cir. 2002).  That said, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level."  *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007) (internal citations and quotations omitted).  I may grant the motion only if "no relief could be granted under any set of facts that could be proved consistent with the allegations."  *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

### B.    Jurisdictional Bars

At the outset, Defendants argue that three provisions of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") deprive this Court of jurisdiction to hear Plaintiff's

claims; they are: 8 U.S.C. §§ 1252(b)(9); 1252(g); and 1252(a)(2)(B)(ii).  I must consider these questions first, because absent subject-matter jurisdiction, I cannot proceed.  *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93-102 (1998) (rejecting the so-called doctrine of "hypothetical" or "assumed" jurisdiction and holding that courts should address subject-matter jurisdiction first); *Crestview Vill. Apartments v. United States Dep't of Hous. & Urban Dev.*, 383 F.3d 552, 557 (7th Cir. 2004); *State of Illinois v. City of Chicago*, 137 F.3d 474, 478 (7th Cir. 1998) ("Subject-matter jurisdiction is the first question in every case, and if the court concludes that it lacks jurisdiction it must proceed no further.").

Jurisdiction stripping provisions must be interpreted in light of "the strong presumption in favor of judicial review of administrative action."  *INS v. St. Cyr*, 533 U.S. 289, 298 (2001). Moreover, it is also essential to remember the Supreme Court's admonition that "[w]here Congress intends to preclude judicial review of constitutional claims its intent to do so must be clear."  *Demore v. Kim*, 538 U.S. 510, 517 (2003) (*citing Webster v. Doe*, 486 U.S. 592, 603 (1988)).

### 1.      **8 U.S.C. §§ 1252(b)(9)**

The first of the three provisions Defendants raise is 8 U.S.C. § 1252(b)(9).  It states, in pertinent part:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section.

8 U.S.C. § 1252(b)(9).

The plain text of the subsection reveals that it only applies with respect to review of an order of removal. *St. Cyr*, 533 U.S. at 313 (holding that subsection (b)(9) applies only "[w]ith respect to review of an order of removal"); *see also Madu v. U.S. Atty. Gen.*, 470 F.3d 1362, 1367 (11th Cir. 2006) (finding subsection (b)(9) inapplicable because it only applies to removal orders and that case did not involve a removal order). Although the Immigration Judge determined that Plaintiff was removable, he granted Plaintiff an adjustment of status instead of entering a removal order. Therefore, since a removal order was not entered, § 1252(b)(9) does not apply. Also, it appears from Defendants' absence of references to this point in their reply brief, that Defendants concede this point.

### 2. **8 U.S.C. § 1252(g)**

The second section Defendants point to is § 1252(g). It states:

> Except as provided in this section and notwithstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this Act.

8 U.S.C. § 1252(g).

The Supreme Court explains that this subsection "applies only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471, 483 (1999) (emphasis in original). As a result of the *American-Arab* Court's decision, Defendants must do more than simply assert that Plaintiff's claims are related to removal proceedings. *Id.* at 483 ("It is implausible that the mention of three discrete events

along the road to deportation was a shorthand way of referring to all claims arising from deportation proceedings.").

In their reply brief, Defendants narrow the focus of their § 1252(g) argument, and now seek to apply it only to Plaintiff's Fourth Amendment claim. Defendants assert that § 1252(g) bars the Fourth Amendment claim because Plaintiff's arrest and detention arose from Defendants' decision to initiate removal proceedings. In my view, Plaintiff's Fourth Amendment claims must be bifurcated: there was the arrest and nearly three-month detention that occurred after the INS initiated removal proceedings against him; and the twelve-plus hours of interrogation that preceded his arrest.

Turning first to Plaintiff's arrest/detention, I find that § 1252(g) bars this portion of Plaintiff's Fourth Amendment claim. Defendants assert that "when removal proceedings are initiated against an inadmissible alien by issuing a removal order, the alien is automatically arrested and detained."[1] The arrest/detention arose from the decision to commence proceedings, and Plaintiff's Fourth Amendment claim arose from the arrest/detention. Thus, Defendants complete the syllogism by asserting that the Fourth Amendment claim arose from the decision to commence proceedings.

_____

[1]However, Defendants also noted that "[o]n December 14, 2001, INS granted Khorrami parole under 8 U.S.C. § 1226, releasing him from detention pending Khorrami's removal proceedings." This seemingly undermines Defendants' contention that arrest and detention follow automatically from the decision to commence proceedings. *See also* 8 U.S.C. § 1226(a) ("[A]n alien *may* be arrested and detained pending a decision on whether the alien is to be removed from the United States." (emphasis added)); 8 C.F.R. § 236.1(b)(1) ("At the time of issuance of the notice to appear, or at any time thereafter and up to the time removal proceedings are completed, the respondent *may* be arrested and taken into custody . . . ." (emphasis added)).

In a 1999 opinion, the Fifth Circuit sketched the contours of the "arising from" language in § 1252(g). *See Humphries v. Various Federal USINS Employees*, 164 F.3d 936, 943-45 (5th Cir. 1999).[2] The court noted that the plaintiff's claims of involuntary servitude did not "arise from" a decision or action of the Attorney General because the alleged events occurred before the Attorney General made any decisions or took any actions. *Id.* at 944. Similarly, the court determined that § 1252(g) did not bar the plaintiff's allegations of mistreatment while in detention. *Id.* The court reasoned that those claims "bear no more than a remote relationship to the Attorney General's decision to execute [the plaintiff's] removal order." *Id.* Conversely, the court found that § 1252(g) did bar the plaintiff's retaliatory exclusion claim. The court opined that it was "a significant and important event in the chain of causation leading to [the plaintiff's] alleged unconstitutional exclusion" and it appeared "to provide the most direct, immediate, and recognizable cause of [the plaintiff's] injury." *Id.* at 945; *see also Foster*, 243 F.3d at 214-15 (holding that § 1252(g) barred the plaintiff's claims of excessive force, denial of due process, denial of equal protection and retaliation because they were "all directly connected to the execution of the deportation order").

Dr. Khorrami's Fourth Amendment claim (the portion covering the arrest/detention) is more akin to the *Humphries* plaintiff's retaliatory exclusion claim than to his involuntary servitude or his mistreatment claims. Plaintiff's claim bears more than a cursory relationship to the decision to commence proceedings. It was a direct outgrowth of the decision to commence

_____

[2]I note that *Humphries* must be used cautiously; its consideration of the IIRIRA preceded the Supreme Court's narrow construction of the statute in *American-Arab*. However, the Fifth Circuit subsequently held that the *American-Arab* decision did not alter the *Humphries* court's interpretation of the phrase "arising from." *Foster v. Townsley*, 243 F.3d 210, 214-15 n.2 (5th Cir. 2001).

9

proceedings.[3] Since I find that Plaintiff's Fourth Amendment claim (the arrest/detention portion) "arises from" the decision to commence removal proceedings, I find that § 1252(g) divests this Court of subject-matter jurisdiction to hear it. *But see Medina v. United States*, 92 F.Supp. 2d 545, 554 (E.D. Va. 2000) ("§ 1252(g) does not indicate that Congress intended to divest the court of jurisdiction over *Bivens* actions arising out of the unconstitutional conduct of federal officers.").[4]

I note that I am not at all certain that this is the type of claim Congress sought to bar when it enacted § 1252(g). As one judge noted, section 1252(g) "was intended to help restore order to the administrative process by preventing multiple lawsuits over claims arising from action involving the removal of an alien—not to foreclose bona fide legal and constitutional questions unrelated to the removal order by barring all federal court review." *Arar v. Ashcroft*, 414 F. Supp. 2d 250, 270-71 (E.D.N.Y. 2006). Nevertheless, "[t]he cardinal rule of statutory interpretation is that courts must first look to the language of the statute and assume that its plain meaning accurately expresses the legislative purpose." *United States v. Miscellaneous Firearms, Explosives, Destructive Devices and Ammunition*, 376 F.3d 709, 712 (7th Cir. 2004) (*quoting Grzan v. Charter Hosp. of Northwest Ind.*, 104 F.3d 116, 122 (7th Cir. 1997)). In addition, the

---

[3]Even if the arrest and detention did not *automatically* follow from the decision to commence removal proceedings, *see supra* note 1, they nevertheless flowed directly therefrom.

[4]In addition, Plaintiff's reliance on *Sissoko v. Rocha*, 440 F.3d 1145 (9th Cir. 2006) is unavailing. The Ninth Circuit held that § 1252(g) did not bar the plaintiffs there from asserting a *Bivens* claim for false arrest in violation of the Fourth Amendment. 440 F.3d at 1159. However, unlike in this case, the *Sissoko* plaintiff was not arrested in connection with the commencement of removal proceedings. The Ninth Circuit panel highlighted this, noting that the plaintiffs' case there was "not based on an injury claimed to result from a decision formally to commence removal proceedings, as no such proceedings were ever commenced." *Id.* at 1157. Since I determine that Dr. Khorrami's Fourth Amendment claim did stem from a decision to formally commence removal proceedings, *Sissoko* is inapposite.

plain reading I adopt here does not implicate the concerns the Supreme Court raised in *Denmore v. Kim* and *Webster v. Doe*. Dr. Khorrami had a remedy available to him: he could have raised his challenges in a petition for habeas corpus. *See St. Cyr*, 530 U.S. at 299 (holding that the IIRIRA did not bar habeas corpus proceedings even though it precluded direct judicial review of INS deportation orders).

Irrespective of whether § 1252(g) bars Plaintiff's Fourth Amendment claims involving his arrest and detention, that section cannot serve to limit this Court's jurisdiction regarding his pre-arrest interrogation. The twelve-hour interrogation occurred before the "Notice to Appear" and the letter indicating parole revocation were issued to Plaintiff. Thus, the interrogation preceded the commencement of removal proceedings, thereby rendering § 1252(g) inapplicable. *See Humphries*, 164 F.3d at 944 ("[W]e would defy logic by holding that a claim for relief somehow 'aris[es] from' decisions and actions accomplished only after the injury allegedly occurred.").

For purposes of surviving a motion to dismiss, Plaintiff's complaint satisfactorily pleads his pre-arrest interrogation as a seizure. A person is "seized" for Fourth Amendment purposes "only if, in view of all of the circumstances surrounding the incident, a reasonable person [in the subject's position] would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). The *Mendenhall* Court explained further that a reasonable person might not believe he was free to leave when faced with "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." 446 U.S. at 554.

Although Plaintiff states in his complaint that he "cooperated throughout the questioning," this does not necessarily mean that he did not believe that he was free to leave.

Plaintiff notes in his brief in opposition to the Motion to Dismiss that the interrogation began by an FAA security representative ripping the ID chain from around Plaintiff's neck.  In addition, he points out that several agents appeared, that they used threatening language, that they refused—despite his repeated requests—to permit him to call the British embassy, and that an official told him that if he did not consent to using a lie detector in court that he would not "get out of here."  Since Plaintiff's pleading is sufficient (at this stage) to establish that his pre-arrest interrogation was a seizure, and since it transpired before removal proceedings commenced, § 1252(g) does not bar the portion of Plaintiff's Fourth Amendment claim covering the pre-arrest interrogation.

### 3.      8 U.S.C. § 1252(a)(2)(B)(ii)

Lastly, Defendants argue that 8 U.S.C. § 1252(a)(2)(B)(ii) bars Plaintiff's Procedural Due Process claim.  That section provides:

> Notwithstanding any other provision of law . . . no court shall have jurisdiction to review . . . any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title.

8 U.S.C. § 1252(a)(2)(B)(ii).

Defendant argues that this subsection bars Plaintiff's Fifth Amendment claim because "it constitutes a challenge to the government's discretionary decision to deny bail to an alien pending removal proceedings."  However, the incidents Plaintiff complains of can hardly be characterized as within the discretion of the Attorney General.  Plaintiff alleges that he was subjected to physical and psychological abuse.  He also alleges that officials knowingly supplied false information in order to prolong his detention.  These are not the sorts of discretionary actions Congress sought to shield from judicial review.  As the Ninth Circuit stated, "decisions

12

that violate the Constitution cannot be 'discretionary,' so claims of constitutional violations are not barred by § 1252(a)(2)(B)." *Kwai Fun Wong v. United States*, 373 F.3d 952, 963 (9th Cir. 2004) (*citing Torres-Aguilar v. INS*, 246 F.3d 1267, 1270 (9th Cir. 2001); *Sanchez-Cruz v. INS*, 255 F.3d 775, 779 (9th Cir. 2001)).

In sum, § 1252(g) strips this Court of jurisdiction to hear the portion of Plaintiff's Fourth Amendment claim dealing with his arrest and detention. The three provisions upon which Defendants rely do not block any of Plaintiff's other claims.

    C.    *Personal Jurisdiction*

    1.    **Fourth Amendment Claim**

Since I previously dismissed the arrest/detention portion of Plaintiff's Fourth Amendment claim, I need only consider whether this Court may properly exercise personal jurisdiction over the Defendants involved in Dr. Khorrami's pre-arrest interrogation.

While I determined that § 1252(g) does not prevent Plaintiff from pursuing the pre-arrest interrogation portion of his Fourth Amendment claim, I find that this Court lacks personal jurisdiction over the Defendants involved in Dr. Khorrami's pre-arrest interrogation.

The Illinois long-arm statute "permits its courts to exercise jurisdiction on any basis permitted by the Illinois and United States Constitutions." *Hyatt Intern. Corp. v. Coco*, 302 F.3d 707, 714 (7th Cir. 2002) (*citing Central States, Southeast and Southwest Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 940 (7th Cir. 2000)). There is no operative difference between the limits imposed by the Illinois Constitution and the federal limitations on personal jurisdiction. *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997); *Klump v. Duffus*, 71 F.3d 1368, 1371 n. 4 (7th Cir. 1995). Under federal law, the defendant must have sufficient minimum contacts with the forum state "such that the maintenance of the suit

does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The defendant must have "purposefully established minimum contacts within the forum State" before personal jurisdiction will be found to be reasonable and fair. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985).

The Defendants that Plaintiff identifies as allegedly being involved in the pre-arrest interrogation are defendants Neinhardt and Mueller. Based on Plaintiff's complaint and the affidavits that Neinhardt and Mueller submitted,[5] I find that the Defendants implicated in the pre-arrest interrogation portion of Plaintiff's Fourth Amendment claim lack sufficient minimum contacts with Illinois. Over the past thirty years, neither of the operative Defendants have lived, worked, owned property, or engaged in business in Illinois. Therefore, personal jurisdiction is lacking in this Court. I am dismissing the remaining portion of Plaintiff's Fourth Amendment claim without prejudice. If Plaintiff intended to allege Fourth Amendment violations stemming from this pre-arrest interrogation against any Defendants to whom personal jurisdiction would extend in this Court, I am granting him leave to file an amended complaint.

## 2. Fifth Amendment Claim

A consideration of Defendant's personal jurisdiction arguments in the context of Plaintiff's Fifth Amendment claim must be divided into three parts. I must separately consider

---

[5]Though I am generally limited to considering the facts alleged in the complaint, when considering a motion to dismiss for lack of personal jurisdiction, I may consider affidavits. *See Nelson v. Park Indus., Inc.*, 717 F.2d 1120, 1123 (7th Cir. 1983) (stating that a court may receive and weigh affidavits to determine whether it has personal jurisdiction). Since I am deciding this question based on the written submissions—i.e., without an evidentiary hearing—Dr. Khorrami "need only make out a prima facie case of personal jurisdiction." *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003) (*quoting Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002)).

Plaintiff's substantive due process claim, his procedural due process claim, and his equal protection claim.

I find that—as it is set forth in Plaintiff's first amended complaint—personal jurisdiction does not extend to the Defendants alleged to have committed substantive due process violations. The incidents that could possibly constitute substantive due process violations were all allegedly committed by Wisconsin Defendants. Plaintiff alleges that Agent Neinhardt punched him in the arm, Agent Mueller knocked him out of a chair, and Agent Mueller kicked him repeatedly on the left side of his body. In light of the sufficient minimum contacts jurisprudence set forth above, personal jurisdiction does not attach to these Defendants.[6] The complaint as currently styled alleges no substantive due process violations against identifiable Defendants to whom personal jurisdiction would extend in this Court. It is unclear whether Plaintiff intended to allege substantive due process claims against Defendants to whom personal jurisdiction would have extended in this Court. In the event Plaintiff so intended, I am granting him leave to file an amended complaint.

There are no personal jurisdiction infirmities with the procedural due process component of Plaintiff's Fifth Amendment claim. Plaintiff's procedural due process complaint is premised on his allegation that defendant Rolince knowingly submitted a false affidavit in the context of Dr. Khorrami's removal proceedings. Defendants concede that Dr. Khorrami sufficiently alleges that defendant Rolince was involved in tortious activity in Illinois. "[W]hen a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's

_____

[6]To the extent Plaintiff alleges that Agent Felske committed a substantive due process violation—he was at the jail, but not in the room when some of the alleged abuse occurred—he too is a non-Illinois resident lacking sufficient minimum contacts with Illinois. Therefore, the substantive due process claim is dismissed without prejudice as to him as well.

contacts with the forum, the State is exercising 'specific jurisdiction' over the defendant."

*Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984); *accord Hyatt*,

302 F.3d at 713 (describing specific jurisdiction as that which covers "controversies that arise out

of or are related to the defendant's forum contacts"). Because defendant Rolice sent his affidavit

to an Immigration Judge in Chicago, specific jurisdiction exists here and thus personal

jurisdiction concerns do not impede Plaintiff's procedural due process complaint.

To the extent that Plaintiff's equal protection claim implicates officers in Wisconsin,

personal jurisdiction is lacking.

> D. *Sufficiency of Plaintiff's* Bivens *Claim*

Defendants argue that Plaintiff has failed to sufficiently plead his *Bivens* claim. I have

already dismissed Dr. Khorrami's entire Fourth Amendment claim, and the substantive due

process component of his Fifth Amendment claim, on other grounds. Thus, I need only consider

the equal protection and procedural due process claims here.

Even under the liberal notice pleading requirements embodied in Fed. R. Civ. P. 8, Dr.

Khorrami fails to sufficiently plead an equal protection claim. First, nowhere does he allege that

he was treated differently because of his race, religion, nationality, or on any other protected

basis. In addition, to the extent I might infer that he is arguing that he was discriminated against

due to his nationality, that avenue is foreclosed to him in the context of removal proceedings.

*See American-Arab*, 525 U.S. at 491; *Hadayat v. Gonzales*, 458 F.3d 659, 664-65; *Jean v.

Nelson*, 727 F.2d 957, 970 (11th Cir. 1984).

In addition, to state a cause under *Bivens*, a plaintiff "must allege facts which show that

the individual defendant was personally involved in the deprivation of the plaintiff[s']

constitutional rights." *Gossmeyer v. McDonald*, 128 F.3d 481, 494 (7th Cir. 1997) (*citing Black*

*v. Lane*, 22 F.3d 1395, 1401 (7th Cir. 1994)). With respect to his procedural due process claim, Plaintiff properly alleges that it was Michael Rolince who knowingly filed the false affidavit. This is sufficient.

Defendants also argue that Plaintiff's procedural due process claim should be dismissed because "inadmissible aliens such as Khorrami have no constitutionally protected liberty interest to be free from detention pending removal proceedings." The Government distilled this line of reasoning by arguing: "[b]ecause Khorrami had no constitutional, statutory, or regulatory right to challenge the government's detention of him, the inaccurate statements contained in Rolince's affidavit could not have violated Khorrami's due process rights." The Government also argues that "the Attorney General's decisions to revoke Khorrami's parole and deny bail pending removal proceedings are entirely discretionary." As a result, the Government continues, "Khorrami cannot base any due process rights on discretionary decisions to revoke parole and detain him during removal proceedings."

At bottom, Defendants seem to be arguing that since Khorrami did not have a general right to be free from detention, the Government could lawfully go to any and all lengths to keep him locked up. These arguments contradict basic notions of fairness and, if pushed to their limits, would turn immigration proceedings into mere kangaroo courts. I have no doubt the Government has no intention to do so, but that does not make the assertion of the power to do so any more palatable. Regardless of the precise contours of an alien's procedural due process rights, some rights do exist. *See Reno v. Flores*, 507 U.S. 292, 306 (1993) ("It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings."). Those rights are sufficient to overcome Defendant's motion to dismiss at this state of the litigation.

*E.       Other Arguments*

Plaintiff's only remaining claim is his Fifth Amendment procedural due process claim. Defendants make a number of arguments urging dismissal, none of which are availing.

**1.       National Security**

Defendants argue that Plaintiff's claims here are nonjusticiable due to national security concerns.  I disagree.  Quite simply, the issues raised in this case do not thus far implicate the kind of high-level concerns that at times have prompted courts to decline to intercede.  If the national security concerns failed to compel the Supreme Court to defer in *Hamdi v. Rumsfeld*, 542 U.S. 507 (2004), then the clearly less significant issues presented here also fail to warrant a finding of nonjusticiability.

**2.       *Bivens* "Special Factor"**

Defendants argue that a *Bivens* remedy should be barred here because the INA is a comprehensive regulatory scheme.  In *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), the Court held that a federal law cause of action for money damages could be inferred directly from the Fourth Amendment.  403 U.S. at 392.[7]  The *Bivens* Court, however, carved out two situations in which the remedy would not apply.  The first is "when defendants show that Congress has provided an alternative remedy which it explicitly declared to be a *substitute* for recovery directly under the Constitution and viewed as equally effective."  *Carlson v. Green*, 446 U.S. 14, 18-19 (1980) (emphasis in original); *see also Bivens*, 403 U.S. at 397.  The second exception is where there are "special factors counseling hesitation

_____

[7] Subsequent decisions have expanded the remedy to violations of other Constitutional provisions.  *See Davis v. Passman*, 442 US. 228 (1979) (Fifth Amendment); *Carlson v. Green*, 446 U.S. 14 (1980) (Eighth Amendment); *Bush v. Lucas*, 462 U.S. 367 (1983) (First Amendment).

in the absence of affirmative action by Congress." *Carlson*, 446 U.S. at 18; *see also Bivens*, 403 U.S. at 396-97. It is this second exception that Defendants raise here.

Courts have found that one of the "special factors counseling hesitation" exists when there is a comprehensive regulatory scheme in place. *See, e.g., Schweiker v. Chilicky*, 487 U.S. 412 (1988); *Bush v. Lucas*, 462 U.S. 367 (1983). Defendants argue that the INA is just such a comprehensive regulatory scheme, and therefore, they urge that it counsels hesitation.

The INA does not contain the type of comprehensive regulatory scheme that warrants hesitation in this context. While it is comprehensive in terms of regulating the in-flow and out-flow of aliens, it is not comprehensive in terms of providing a remedy for conduct such as is alleged here. *See Arar*, 414 F. Supp. 2d at 280-81 (holding that the INA's thorough coverage of the admission, exclusion and removal of aliens "does not automatically lead to an adequate and meaningful remedy" for alleged constitutional violations); *Turkmen v. Ashcroft*, 02 C 2307, 2006 WL 1662663, at *29 (E.D.N.Y. June 14, 2006) ("Although . . . the INA provides a comprehensive *regulatory* scheme for managing the flow of immigrants in and out of the country, it is by no means a comprehensive *remedial* scheme for constitutional violations that occur incident to the administration of that regulatory scheme." (Emphasis in original)).

Since Plaintiff alleges a violation of his constitutional right to due process, the *Bivens* "special factor" exception is inapplicable.

### 3.    *Heck v. Humphrey*

In *Heck v. Humphrey*, the Supreme Court established a rule precluding claims that, if proven, would necessarily imply the invalidity of a conviction or sentence. *Heck v. Humphrey*, 512 U.S. at 477, 487 (1993); *see also Edwards v. Balisok*, 520 U.S. 641 (1994). To the extent

this rule even applies in the immigration context, it would only bar Dr. Khorrami's claims if his claims would "necessarily imply" the invalidity of the INS order. *Id.*

I find that *Heck* is not implicated here. Because I determined that 8 U.S.C. § 1252(g) barred the portion of Dr. Khorrami's Fourth Amendment claim pertaining to his arrest and detention, I need not—and in fact do not—reach the "belt and suspenders" question of whether *Heck* and *Edwards* would pose an additional bar to those claims. In addition, his Fifth Amendment due process claim—if successful—would only yield civil damages. This would not affect the immigration judge's decision, nor would it imply that his order was invalid. *See Jogi v. Voges*, 425 F.3d 367, 385-86 (7th Cir. 2005) ("If success in the lawsuit would not spell immediate or speedier relief, then § 1983 [and *Bivens*] remain[] available for use, and Heck does not bar the action.").

### 4. Qualified Immunity

Defendants argue that I should dismiss Plaintiff's claim based on qualified immunity. I find that these attacks on Plaintiff's complaint are premature. *See Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001) ("[A] complaint is generally not dismissed under Rule 12(b)(6) on qualified immunity grounds."); *Jacobs v. City of Chicago*, 215 F.3d 758, 765 n. 3 (7th Cir. 2000). As now-Chief Judge Easterbrook noted in his *Jacobs* concurrence: "Rule 12(b)(6) is a mismatch for immunity and almost always a bad ground for dismissal . . . and when defendants do assert immunity it is essential to consider facts in addition to those in the complaint." *Jacobs*, 215 F.3d at 775 (Easterbrook, J., concurring).

## III. CONCLUSION

For the foregoing reasons, Plaintiff's Fourth Amendment claim is dismissed. The portion of that claim pertaining to Plaintiff's pre-arrest interrogation is dismissed without prejudice.

Defendants' motion to dismiss Plaintiff's Fifth Amendment procedural due process claim is denied. Plaintiff's substantive due process claim is dismissed without prejudice. Plaintiff's equal protection claim is dismissed.

ENTER:

James B. Zagel
United States District Judge

DATE:  Jun 26, 2007